In the Matter of MAX BENJAMIN WALDER (Known as MAX B. WALDER), an Attorney, Respondent.

First Department, December 31, 1930.

*Einar Chrystie*, for the petitioner.

*Max B. Walder* [*A. Arthur Giden* of counsel], respondent in person.

DOWLING, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Supreme Court of the State of New York, Appellate Division, First Department, on June 30, 1920.

A petition was filed charging the respondent with professional misconduct. He appeared and answered and the matter was then referred to one of the official referees. The learned official referee has duly reported and the matter is now before the court on a motion for such action as the court may deem just and proper.

The petition sets out three charges of misconduct by respondent as an attorney at law. The first charge reads as follows: " In January, 1927, the respondent induced Joseph Osherowitz to loan him the sum of $1630 by falsely stating and representing to Osherowitz that he would hold for his benefit as security for the repayment of said sum of $1630, a bond and mortgage on the premises No. 153 West 95th Street, Borough of Manhattan, City of New York, which the respondent represented and stated was ample security for the loan. On January 26, 1927, the respondent delivered to Osherowitz as evidence of the transaction a letter of which the following is a copy: " ' *January* 26, 1927.

" ' Mr. JOSEPH OSHEROWITZ,
 " ' 370 Fourth Ave.,
  " ' Astoria, L. I.

" ' DEAR SIR:   This is to advise you that the third mortgage which I am taking over on premises 153 West 95th Street, New York, N. Y. will be held as security for your loan of $1630 to me.

" ' The mortgage will not be assigned, transferred or sold to anyone else but same will be held as security for said loan.
 " ' Very truly yours,
  " ' GOLDSTEIN & WALDER,
   " ' by (sd.) MAX B. WALDER.'

" The statements set forth in this letter were entirely false and untrue. The respondent did not have any mortgage on the premises described in the letter and did not hold any security for the repayment of the loan obtained from Osherowitz. The respondent has repaid to Osherowitz $900 on account but the balance remains unpaid and unsecured."

The record as to this charge establishes that under date of January 8, 1927, respondent wrote Osherowitz a letter in which he stated that he was taking over a third mortgage on property 153 West Ninety-fifth street, New York, which was originally $3,000 but which had been reduced to $2,550; that he needed about $1,500 for a year, payable $25 a month with interest. Thereafter respondent took Osherowitz to see the property and on January 11, 1927, Osherowitz gave respondent $1,500 in cash and received from him a receipt for $1,630, the difference in the two amounts representing the bonus which Osherowitz was to receive for making the loan. Later respondent gave Osherowitz the letter, which is set out in the charge in which he stated: " This is to advise you that the third mortgage which I am taking over on premises 153 West 95th Street, New York, will be held as security for your loan of $1630 to me. The mortgage will not be assigned, transferred or sold to anyone else but same will be held as security for said loan."

Respondent's own testimony shows that he did not receive an assignment of this mortgage until March, 1927, and that he satisfied the mortgage on April 28, 1927, receiving $500 for the satisfaction, which $500 he used. He testified that he satisfied the mortgage after getting in touch with Osherowitz (which is denied by the latter) for $500 only because there was no possibility of saving any more. Osherowitz's denial of being advised by respondent of the proposed satisfaction of the mortgage for $500 finds support in the testimony of Meyer Wilen, an attorney whom Osherowitz consulted in the summer of 1927. Wilen testified that he called on respondent in September, 1927, and, among other things, asked for an assignment of this mortgage covering 153 West Ninety-fifth street. Respondent then said it was no longer in his possession. It was Wilen's recollection that respondent said he had assigned it. Osherowitz testified that he had received from respondent altogether, on account of the $1,630 mentioned in the receipt and letter, the sum of $1,075.

Respondent urges that his letter of January 26, 1927, is not a representation that he had already taken title to the mortgage, but that he expected to own the same in the future, and that later he did own it.

The learned official referee made no specific comment or finding

in reference to this first charge. Respondent's letters of January 8 and 26, 1927, indicate a taking over of the mortgage in question contemporaneous with the obtaining of the loan from Osherowitz. The fact that the mortgage was not taken over until some two months later, in the absence of a satisfactory explanation of the delay, leads us to conclude that respondent was guilty of misrepresentation. It appears that respondent had an interest in the corporation owner of the premises covered by the mortgage. His good faith in satisfying it for $500 is open to question by reason of that fact, by his failure to turn over to Osherowitz the money received therefor, and, further, by his concealment of the true situation when questioned by Wilen in September. His disposition of the mortgage, in view of all the circumstances, would seem to have been made in violation of his promise to hold it as security for the loan.

The second charge in the petition reads as follows: " In July, 1927, the respondent induced Joseph Osherowitz to give him the sum of $4000 by stating and representing to him that the money would be used for the purpose of paying off a mortgage held by one Mary Pferbloom on premises No. 1169 Leland Avenue, Borough of the Bronx, New York City, in which premises the respondent had an interest. As security for the repayment of said sum of $4000, the respondent delivered to Osherowitz a mortgage for that amount on said premises which respondent stated and represented to Osherowitz was a second mortgage thereon and ample security for the loan.

" On or about August 17, 1927, the respondent as evidence of his agreement with Osherowitz gave him a letter of which the following is a copy: " ' *August* 17, 1927.

" ' Mr. JOSEPH OSHEROWITZ,
　　" ' 370 Fourth Avenue,
　　　" ' Astoria, L. I.

" ' DEAR SIR: This is to advise you that the $4000 which I took from you and for which I am giving you a second mortgage of $4000 on 1169 Leland Avenue, Bronx, New York, will be used for the purpose of paying the present second mortgage held by Mrs. Mary Pferbloom on the above mentioned premises.

" ' This is also to advise you that the mortgage which Mr. Herman J. Stich has on the property and which is now reduced to about $2100 or thereabouts is a mortgage subject and subordinate to a mortgage or mortgages not exceeding $16,000, so that as soon as the mortgage held by Mrs. Mary Pferbloom is paid off your mortgage will be a second mortgage.

　　　　　" ' Very truly yours,
　　　　　　" ' (Sd.) MAX B. WALDER.'

" The representations made by the respondent were all false and untrue. The mortgage given to Osherowitz was a fourth mortgage instead of a second mortgage and subject to mortgages aggregating $21,400. The respondent did not use any part of the $4000 for the purpose of paying off the mortgage on the premises held by Mary Pferbloom, as agreed, and she thereafter foreclosed her mortgage. Osherowitz has not received any part of the money given to the respondent as above stated."

As to this charge, Osherowitz testified that in July, 1927, respondent told him he needed money to renew a second mortgage on property 1169 Leland avenue, borough of The Bronx, city of New York. Respondent took him to see the property, told him that there was a first mortgage on the property which was for $13,000 originally but which had been reduced to $11,200. Respondent showed him a letter from the holder of the second mortgage, asking for the balance of her money, because the mortgage had expired, and Osherowitz agreed to lend him the money needed. Osherowitz gave respondent a check for $3,480. The difference between that amount and $4,000, the amount of the proposed loan, Osherowitz testified, represented money owed by respondent to him, plus interest and incidental expenses. Respondent gave Osherowitz a receipt reading as follows:                          " 7–14th–1927."

" Received of Mr. Osherowitz the sum of $4,000 for 2nd mortgage on either 1161 or 1169 Leland Ave., Bronx, N. Y., 3 year mtge, payable quarterly.       .                          " MAX B. WALDER."

Respondent gave Osherowitz a duplicate bond and mortgage. The mortgage covered property 1169 Leland avenue. The record herein indicates that soon thereafter Osherowitz entertained some suspicion of respondent. He consulted another attorney, Meyer Wilen, who made a search of the records. Wilen reported to Osherowitz that the mortgage, the duplicate of which respondent had given him, had not been recorded; that if it had been recorded, it would have been a fourth mortgage only, subject to three prior mortgages totaling $21,400. Whereupon Osherowitz called on respondent and, according to the testimony of Osherowitz on cross-examination, he charged respondent with fooling him again; that respondent said, " I will give you black and white everything, that that money was taken to pay off Mrs. Mary Pferbloom and when she shall come back from the country I shall pay it off." At the same time, Osherowitz testified respondent admitted not recording the mortgage. Respondent then gave Osherowitz the letter reading as follows:

"*August* 17, 1927.

" Mr. JOSEPH OSHEROWITZ,
    " 370 Fourth Ave.,
        " Astoria, L. I.

" DEAR SIR: This is to advise you that the $4,000 which I took from you and for which I am giving you a second mortgage of $4,000 on 1169 Leland Avenue, Bronx, New York, will be used for the purpose of paying the present second mortgage held by Mrs. Mary Pferbloom on the above mentioned premises.

" This is also to advise you that the mortgage which Mr. Herman J. Stich has on the property and which is now reduced to about $2,100 or thereabouts is a mortgage subject and subordinate to a mortgage or mortgages not exceeding $16,000, so that as soon as the mortgage held by Mrs. Mary Pferbloom is paid off your mortgage will be a second mortgage.

" Very truly yours,

" MBW /MB.                                MAX B. WALDER.."

In September, 1927, respondent gave to Osherowitz the mortgage which had been recorded by respondent late in August. Upon receiving it Osherowitz protested that the mortgage did not state that it was a second mortgage. Whereupon respondent wrote in, on the recorded mortgage, the following, " This mortgage is subject and subordinate to first mortgage given to secure the amount of $11,250," and initialed the insertion. The form of mortgage used was a form with the notation on the face thereof in the upper left-hand corner, " Second Mortgage (N. Y. Co. Reg. S. M. 3) Individual or Corporation," with a summary of the clauses used in the form. Respondent did not use the money he obtained from Osherowitz to pay off the Pferbloom mortgage. In November, 1927, an action was commenced to foreclose that mortgage; the action went to judgment and sale, the plaintiff bought the property at the sale, and obtained a deficiency judgment. Nothing has been paid on account of this loan, according to Osherowitz.

Respondent's story is that in June, 1927, he told Osherowitz he needed some money and asked Osherowitz if he would lend him $4,000 or $5,000 for a few months, that Osherowitz was not interested in making any loan for a few months, that if he made any loan at all he would make it for a period of three or four years. Respondent testified: " I then suggested to him that he make me a loan on the following condition: That he make a loan of $4000 for three years, payable $200 quarterly; that in the event that the foreclosure on 1770 Topping Avenue was straightened out, and I received any part of the $30,000 which I had invested there personally, that I would return him the money and I would not

require a mortgage on any of my property. If, however, matters were not straightened out, that I would pay off the second mortgage on 1169 Leland Avenue, which was in the sum of $4000, and held by one Mary Pferbloom, and his mortgage for $4000 would become the second mortgage, since the third mortgage held by Mr. Herman J. Stich would then be subject to his mortgage, since it was subject to $16,000 in mortgages, and the total amount of the first and second mortgages would not be more than $16,000. I asked him what he would charge for the loan, and he told me that, although he charged me 8 per cent. for only one year on the loan on West 95th Street, he wouldn't charge me more than about 4 per cent. a year on this particular loan; and we finally agreed upon the sum of 13 per cent., which was $520.

"He thereupon gave me a check for $3480 and I gave him a receipt for $4000, which included the discount of $520."

Respondent denied that he gave Osherowitz a duplicate bond and mortgage at the time the loan was made. His testimony is that Osherowitz became alarmed over what he heard about respondent's financial condition and suggested that respondent give him the second mortgage on the Leland avenue property and pay off the second mortgage which was then there. Respondent further testified that Osherowitz came to his office with Wilen on August seventeenth, and respondent then gave the letter bearing that date "in order that he should have something to show upon what conditions he gave me the money." It appears that the mortgage was executed the day Osherowitz gave respondent the money, acknowledged the eighteenth or nineteenth of that month (July), and recorded about August 23, 1927. Respondent would have us believe that when he gave the letter of August seventeenth he intended to make the mortgage a second mortgage, but never did. According to his own testimony at that time the money had already been used for another purpose.

The learned official referee in his report states that this second charge is fully sustained by the evidence.

The question is raised by the official referee in his report, as to whether these first two charges are within the purview of disciplinary proceedings by this court. He states, "While it is true that respondent had for some time acted as attorney for the petitioner, the particular matters here complained of in charges #1 and #2 had nothing to do with the relation of attorney and client. The relations were of lender and borrower. The respondent needed money for his real estate operations. The petitioner lent his money as a money lender at a usurious rate; of this the respondent does not complain. His necessities made him willing to pay for

the accommodation but he does complain that in going to the Bar Association the petitioner is using this proceeding for the purpose of collecting a debt by threats and compulsion; a debt which he acknowledged but claims he cannot pay."

We think the situation presented by charges 1 and 2 of the petition is properly a subject for disciplinary action by the court. The record herein establishes that the relationship of attorney and client had existed between respondent and Osherowitz for some time prior to the transactions which are the basis for charges 1 and 2. Respondent testified that investments had been made by Osherowitz through him, secured by bond and mortgage on property other than his own. Therefore, this was not the ordinary relationship of lender and borrower. The customary vigilance of the lender must have been relinquished in favor of the one who had been acting as his attorney and whom he had come to look upon as his adviser and protector. The evil of the situation before us is not the failure to repay the moneys borrowed but the false representations regarding the security for the repayment, and the abuse of the confidence existing because of the relationship of the parties.

Respondent's conduct in using the second mortgage form and his insertion therein, after the return from the recording office, of the statement that the mortgage was subject and subordinate to a first mortgage of $11,500, must have been cunningly calculated to maintain the deception he practiced on his client.

The third charge contained in the petition reads as follows:

" In 1922, Max Bruckenstein acting in behalf of Rabinowitz & Bruckenstein, retained the respondent to bring an action in behalf of the firm against one Pollock to recover the sum of $290, alleged to be due as the purchase price of a fur coat purchased from the firm by Pollock. Thereafter Bruckenstein paid the respondent the sum of $45 or $50, on account of his fees and disbursements in the matter and it was subsequently agreed to settle the claim for $100. On May 25, 1928, the respondent sent Bruckenstein a letter of which the following is a copy:

" ' *May* 25, 1928.

" ' Mr. MAX BRUCKENSTEIN,
" ' 159 West 25th St.,
" ' New York City.

" ' DEAR SIR: This is to advise you that we received a letter from Cohen & Posner dated May 8, 1928, and which I showed you personally that they have a $100 check in the case of Rabinowitz against Pollack.

" ' I am going to wait a few days longer and see whether I cannot get a fee for myself as I was supposed to get.

" ' This is to advise you that you will get $100 irrespective of the amount of money that I am getting out of the case.

" Very truly yours,

" ' GOLDSTEIN & WALDER

" ' By (Sd.) Max B. Walder.'

" Shortly thereafter the respondent collected the sum of $100 therein referred to and converted the same to his own use except the sum of $75 which he paid to his client in instalments."

The record, as to this charge, establishes that the firm of Bruckenstein & Rabinowitz retained the respondent to collect a claim of $290 against Pollock. Suit was brought. After the action had been pending for some years a settlement was arranged. Then respondent wrote the letter set forth in the petition. Thereafter respondent collected $100 from the defendant's attorney. On one occasion he gave Rabinowitz, one of the partners of the firm of Bruckenstein & Rabinowitz, $50, and later gave Bruckenstein $25. Bruckenstein paid repeated visits to respondent's office in an effort to collect the remaining $25. It is respondent's claim that this $25 was withheld pending the adjustment of a dispute as to what was to be paid one Louis W. Weisberg, an attorney and one time clerk for respondent, for some service Weisberg is supposed to have rendered in connection with the suit. Bruckenstein denied any arrangement with Weisberg and denied ever having been told anything about Weisberg by respondent. The $25 was not paid to Bruckenstein up to the time of the hearing herein.

The official referee found that this third charge was sustained by the weight of credible evidence. In this finding this court concurs.

The respondent should be disbarred.

Merrell, Finch, McAvoy and Sherman, JJ., concur.

Respondent disbarred.